**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

SUSAN C.,
                **Plaintiff,**

v.                                                             5:18-cv-00545

**ANDREW M. SAUL,**[1]
**Commissioner of Social Security,**

                **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

**I.    INTRODUCTION**

Plaintiff Susan C. ("Plaintiff") brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), for review of a final determination by the Commissioner of Social Security ("Defendant" or "the Commissioner") denying her application for benefits. Plaintiff alleges that the Administrative Law Judge's decision denying her application was not supported by substantial evidence and was contrary to the applicable legal standards. Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

**II.    BACKGROUND**

    **a.  Procedural**

On November 26, 2012, Plaintiff protectively filed an application with the Social

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. The Clerk of Court is respectfully directed to amend the caption.

Security Administration for benefits under Titles II and XVI of the Social Security Act. The application alleged a date of disability of June 9, 2011, which was subsequently amended to December 13, 2011. The claim was initially denied and timely appealed by request for review by an Administrative Law Judge. On January 27, 2014, a hearing was conducted via video conference before the Hon. Roxanne Fuller, Administrative Law Judge ("ALJ") for the Social Security Administration. On June 10, 2014, ALJ Fuller issued an unfavorable decision in the matter. Plaintiff timely appealed the determination by request for review by the Appeals Council, which was subsequently denied on September 4, 2014. Plaintiff timely sought judicial review of that decision within the United States District Court for the Northern District of New York (Civil Action Number 5:14-cv-1334 (DEP)). On November 18, 2015, judgment in favor of Plaintiff was entered remanding the matter back to the Social Security Administration to further examine Plaintiff's hand tremors and how they would affect her ability to engage in fingering and gross and fine manipulations. Tr. 772-795. On December 18, 2015, the Appeals Council remanded the matter back to ALJ Fuller, directing her to further examine Plaintiff in accordance with the District Court's order. Tr. 776, 968-971. During the pendency of the litigation Plaintiff filed a subsequent application for benefits (November 24, 2014), which the Appeals Council ordered consolidated for a single decision. Tr. 970.

On July 21, 2016, ALJ Fuller conducted a second hearing via video teleconference with Plaintiff. At the commencement of the hearing, Plaintiff's attorney acknowledged that the remand was in relation to the Plaintiff's ability to engage in fingering and gross and fine manipulations, and to determine the impact that Plaintiff's tremors had on these capabilities. Tr. 1997. Counsel also indicated that Plaintiff had asserted in this litigation that she has

2

fibromyalgia "which wasn't properly considered." Tr. 1998. Counsel asked ALJ Fuller to consider Plaintiff's fibromyalgia, which ALJ Fuller indicated she would consider. *Id.* On December 8, 2016, ALJ Fuller issued a second unfavorable decision in the matter. Tr. 773-795. Plaintiff timely filed written exceptions with the Appeals Council. On March 29, 2018 the Appeals Council declined to assume jurisdiction of the claim making ALJ Fuller's December 8, 2016 decision a final determination of the Commissioner. Tr. 765-772. Plaintiff timely commenced this action.

### b. Facts

The Court adopts the parties' undisputed factual recitations. *See* Pl. Br., Dkt. # 12, at 3, 7-9; Def. Br., Dkt. # 16, at 1-14. The Court assumes familiarity with these facts, and will set forth only those facts material to the parties' arguments.

### c. ALJ Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2014, her alleged disability onset date. Tr. 778. At step two, the ALJ found that Plaintiff had the following severe impairments: systemic lupus erythematous, carpal tunnel syndrome, lumbar spine disorder, arthritis, migraines and a sleep disorder. Tr. 778. At step three, the ALJ found that none of Plaintiff's impairments, considered singly and in combination, met or equaled the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 779. The ALJ then assessed Plaintiff's residual functional capacity (RFC) and concluded that she could perform light work as defined in the regulations at 20 C.F.R. §§ 404.1567(b), 416.1567(b), except that she:

3

- could never climb ramps, stairs, ladders, ropes or scaffolds;

- could not be exposed to moving mechanical parts, or unprotected heights;

- could not operate a motor vehicle;

- could frequently handle objects (gross manipulations with both hands), and frequently finger (fine manipulation with both hands); and

- was able to perform simple, routine, repetitive tasks.

Tr. 779-87. At step four, the ALJ found that Plaintiff could not perform her past relevant work. Tr. 787. At step five, aided by the testimony of a vocational expert and the Medical-Vocational Rules, the ALJ found that through the date of her decision, there were a significant number of jobs in the national economy that Plaintiff could perform. Tr. 787. As such, the ALJ found that Plaintiff was not disabled. Tr. 787.

### d. Issues on Appeal

Plaintiff contends that the ALJ's decision is not based on substantial evidence because it fails to account for Plaintiff's diagnosis of fibromyalgia, and fails to properly apply the treating physician rule. In this regard, Plaintiff argues that the ALJ erred by failing to consider Plaintiff's fibromyalgia as a medically determinable impairment (MDI), and that this failure undermines both the credibility determination and RFC finding. Plaintiff further argues that the ALJ erred in failing to properly apply the treating physician rule to Dr. Sherie Viencek, a medical source who referenced fibromyalgia as one of the bases for her opinion that Plaintiff could lift less than five pounds occasionally, could only stand/walk up to two hours, and could only sit for two to four hours in a day. The Commissioner opposes these arguments and argues that Plaintiff fails to demonstrate any work-related limitation caused by her fibromyalgia which was not already considered by the ALJ.

4

## III. STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. *See* 42 U.S.C. § 405(g). First, the Court determines whether the Commissioner applied the correct legal standard. *See Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998); *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990); *Shane v. Chater*, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler, J.)(citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record. *See Tejada*, 167 F.3d at 773; *Balsamo*, 142 F.3d at 79; *Cruz*, 912 F.2d at 11; *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982). A Commissioner's finding will be deemed conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Perez*, 77 F.3d at 46; *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted). In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence test applies not only to the Commissioner's factual findings, but also to inferences and conclusions of law drawn from those facts." *Lim v. Colvin*, 243 F. Supp. 3d 307, 311 (E.D.N.Y. 2017)(citation omitted). "In determining whether the record contains substantial evidence to support a denial of benefits, the

5

reviewing court must examine the entire record, weighing the evidence on both sides to ensure the claim has been fairly evaluated." *Id.* (citing *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983))(internal quotation marks omitted).

Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. *See Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997)(citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). However,

> [i]t is the function of the SSA, not the federal district court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (citing *Richardson*, 402 U.S. at 399, 91 S. Ct. 1420); *see also Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) ("[I]t is up to the agency, and not th[e] court, to weigh the conflicting evidence in the record[.]"). Although the ALJ need not resolve every conflict in the record, "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Calzada v. Asture*, 753 F. Supp.2d 250, 268–69 (S.D.N.Y. 2010) (Sullivan, J.) (internal quotation marks omitted) (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).
>
> To fulfill this burden, the ALJ must "adequately explain his reasoning in making the findings on which his ultimate decision rests" and must "address all pertinent evidence." *Kane v. Astrue*, 942 F. Supp.2d 301, 305 (E.D.N.Y. 2013) (Kuntz, J.) (quoting *Calzada*, 753 F. Supp.2d at 269). "[A]n ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." *Id.* (internal quotation marks and citations omitted). Remand is warranted when "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999).

*Lim*, 243 F. Supp. 3d at 311–12 .

## IV. DISCUSSION

### a. Fibromyalgia as a Medically Determinable Impairment

Impairments generally are defined as "anatomical, physiological, or psychological abnormalities ... demonstrable by medically acceptable clinical and laboratory techniques." 42 U.S.C. § 423(d)(3). "Applying this definition is a straightforward exercise with respect to most physical and mental impairments because they can be identified objectively through standard laboratory, imaging, physical examination and psychological diagnostic techniques. It becomes problematic, however, with respect to fibromyalgia, a medical abnormality consisting of a syndrome of chronic pain of musculoskeletal origin but uncertain cause." *White v. Comm'r of Soc. Sec.*, No. 5:14-CV-1140 (GTS/WBC), 2016 WL 2865724, at *5 (N.D.N.Y. Apr. 21, 2016), *report and recommendation adopted*, 2016 WL 2858859 (N.D.N.Y. May 16, 2016)(citing *Campbell v. Colvin*, No. 5:13–CV–451, 2015 WL 73763, at *5 (N.D.N.Y. Jan. 6, 2015) and *Green–Younger v. Barnhart*, 335 F.3d 99, 101 n. 1 (2d Cir. 2003)). "Persons afflicted with fibromyalgia may experience severe and unremitting musculoskeletal pain, accompanied by stiffness and fatigue due to sleep disturbances, yet have normal physical examinations, *e.g.*, full range of motion, no joint swelling, normal muscle strength and normal neurological reactions. Thus, lack of positive, objective clinical findings does not rule out the presence of fibromyalgia or its symptoms." *Id.* (citations omitted); *see Green–Younger*, 335 F.3d at 108-09 ("In stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. Hence, the absence of swelling joints or other orthopedic and

7

neurologic deficits is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced.")(internal quotation marks, brackets, and citations omitted). While the Social Security Administration has taken administrative notice that fibromyalgia "can be the basis for a finding of disability," *see Soc. Sec. Ruling, Titles II & XVI: Evaluation of Fibromyalgia*, SSR 12-2p, 2012 WL 3104869 (S.S.A. July 25, 2012)("SSR 12-2p"), a mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability. *Rivers v. Astrue,* 280 Fed. App'x 20, 22 (2d Cir. 2008).

The Social Security Administration has provided guidance on the appropriate medical evidence necessary to establish fibromyalgia as a MDI and how to evaluate its limiting effects. *See* SSR 12-2p. SSR 12-2p provides:

> [Fibromyalgia (FM)] is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months. FM is a common syndrome. When a person seeks disability benefits due in whole or in part to FM, we must properly consider the person's symptoms when we decide whether the person has an MDI of FM. As with any claim for disability benefits, before we find that a person with an MDI of FM is disabled, we must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity.

*Id.*

"Generally, a person can establish that he or she has an MDI of FM by providing evidence from an acceptable medical source, " such as a physician. *Id.* "We will find that a person has an MDI of FM if the physician diagnosed FM and provides the evidence we describe in section II.A. or section II. B., and the physician's diagnosis is not inconsistent with the other evidence in the person's case record. These sections provide two sets of

8

criteria for diagnosing FM, which we generally base on the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia 4 (the criteria in section II.A.), or the 2010 ACR Preliminary Diagnostic Criteria 5 (the criteria in section II.B.)." *Id.*

Under the 1990 ACR Criteria for the Classification of Fibromyalgia, the Commissioner may find that a person has an MDI of fibromyalgia if he or she has all three of the following:

> 1. A history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months. The pain may fluctuate in intensity and may not always be present;
>
> 2. At least 11 positive tender points on physical examination. The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist; and
>
> 3. Evidence that other disorders that could cause the symptoms or signs were excluded.

*Id.*

Under the 2010 ACR Preliminary Diagnostic Criteria, the Commissioner may find that a person has an MDI of fibromyalgia if he or she has all three of the following criteria:

> 1. A history of widespread pain;
>
> 2. Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and
>
> 3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded.

*Id.*

"As in all claims for disability benefits, [the Commissioner needs] objective medical

9

evidence to establish the presence of an MDI. When a person alleges FM, longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment." *Id.* "In addition to obtaining evidence from a physician, the Commissioner may request evidence from other acceptable medical sources . . . both to determine whether the person has another MDI(s) and to evaluate the severity and functional effects of FM or any of the person's other impairments. We also may consider evidence from medical sources who are not 'acceptable medical sources' to evaluate the severity and functional effects of the impairment(s)." *Id.*

A longitudinal view of Plaintiff's medical record arguably satisfies the criteria under the 1990 ACR Criteria for Classification of Fibromyalgia and the 2010 ACR Preliminary Diagnostic Criteria. *See* Pl. Br. at 7-9. This appears to show a history of widespread pain in all parts of the body lasting for more than 3 months, more than 11 tender points, and a variety of testing to exclude other conditions. Further, the record appears to show repeated episodes of fatigue, memory problems, waking unrefreshed, muscle pain, insomnia, depression, and headaches. Still further, Plaintiff's rheumatologists opined that "[s]he does have fibromyalgia." Tr. 496. Despite this, the ALJ did not examine whether Plaintiff's fibromyalgia amounted to a MDI under the standard set forth in SSR 12-2p. The ALJ only mentions fibromyalgia twice in her decision. The first follows a discussion about Plaintiff's treatment for back pain. Tr. 781-82. In this regard, the ALJ wrote:

> In March of 2013, the claimant went to Craig Hanifin, RPA-C, at Syracuse Orthopedic Specialists with complaints of back pain that radiated to her right extremity. Mr. Hanifin noted that the claimant appeared to be in mild pain. However, straight leg raising was negative and the claimant's gait was normal. She had mild paraspinal tenderness in her lumbar spine and mild limitations in

10

> range of motion. Motor examination was 5.5 in the claimant's lower extremity and grip strength was 5/5 bilaterally. She had increased pain down both arms with direct posterior compression test. Mr. Hanifin administered a Depo-Medrol injection, but made no other changes to her medication regimen (Ex. 19F, pg. 44-46). By August of 2013, the claimant reported a significant improvement in her fibromyalgia. She still had some joint pain and malar rash. However, she was able to move around with minimal discomfort. A physical examination was also normal (Ex. 21F, pg. 15).

Tr. 781-82.

This appears to indicate that the ALJ considered the effects of Plaintiff's fibromyalgia in August 2013, but not during the entirety of the time frame in issue here. This is significant because the Social Security Administration has indicated that in arriving at a RFC assessment "[f]or a person with FM, we will consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2P. At the July 21, 2016 hearing, Plaintiff testified about the pain she has in her hands, wrists, and feet at that time, how her abilities to stand and walk are better on some days than others, how her hand strength and ability to hold objects has decreased, and how her need to take naps increases on some days. *See* Dkt. # 11. While Plaintiff did not attribute these conditions to fibromyalgia, and while neither her attorney nor the ALJ specifically asked about whether she believed these were fibromyalgia symptoms, the ALJ was required to analyzes whether Plaintiff's testimony of pain in her extremities, and her waxing and waning abilities to stand and walk and the need to take naps, were symptoms related to fibromyalgia. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." ); *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011)( The ALJ must "investigate and

11

develop the facts and develop the arguments both for and against the granting of benefits."); *Puckett v. Berryhill*, No. 17-Civ.-5392 (GBD) (KHP), 2018 WL 6061206, at *2, 2018 U.S. Dist. LEXIS 197904, at *5 (S.D.N.Y. Nov. 20, 2018)("The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity.").

The second mention of fibromyalgia comes within the context of a discussion of Plaintiff's treatment for neck and back pain. *See* Tr. 782. The ALJ wrote:

> The claimant was treated with an epidural steroid injection and prescribed a TENS unit in December of 2014, which suggests that the claimant's symptoms were controlled with conservative treatment (Ex. 24F, pg. 49-52). Records from CNY Neurological Consulting indicate that the claimant ambulated with a normal gait and had no difficulty with toe, heel, or tandem walking throughout 2015 (Ex. 25F). The claimant also visited her rheumatologist in early 2015, and demonstrated 18/18 fibromyalgia tender points on physical examination. However, the claimant was in no acute distress and she did not exhibit any swelling, erythema, or active synovitis in her joints (Ex. 29F, pg. 11-20). In March and October of 2015, the record indicates that the claimant was in no acute distress and could ambulate normally. The claimant's impairments only limited her ability to participate in hobbies. However, she did not report any difficulty with activities of daily living (Ex. 24F, pg. 32-44). In fact, the claimant reported that she was taking a trip to California in April of 2015, as her lupus symptoms had improved (Ex. 26F, pg. 18).

Tr. 782.

Again, the assessment of the effects of Plaintiff's fibromyalgia, and the impact it had on Plaintiff's ability to engage in activities of daily living, appears to be based upon a specific time frame but not on the longitudinal record. Further, the fact that Plaintiff did not exhibit any swelling, erythema, or active synovitis in her joints does not necessarily negate her subjective complaints of fibromyalgia symptoms. *See Green–Younger*, 335 F.3d at 108-

12

09; *see also Lim*, 243 F. Supp. 3d at 316–17 (Following *Green–Younger,* "a number of district courts have overturned denials of disability claims based on fibromyalgia where the ALJ's determination turned on the lack of 'objective' evidence in the record to support the claimant's subjective complaints of pain.")(collecting cases).

It may well be that the RFC of light work with postural, manipulative and other restrictions, supported by the opinions of Dr. Perkins-Mwantuali and Dr. Cole, portions of Dr. Cole's medical source statement, and Plaintiff's responses to various treatments as evidenced by her activities of daily living (which the ALJ thoroughly discussed), is the proper outcome even when considering Plaintiff's fibromyalgia and any associated symptoms or functional limitations. But because the ALJ did not assess Plaintiff's fibromyalgia under the criteria laid out in SSR 12-2p, the Court will remand the matter for further review. The result may be, as the Commissioner argues, that Plaintiff's fibromyalgia did not cause an impediment that prevents her from working under any conditions. Nonetheless, Plaintiff is entitled a review of this issue at the administrative level.

### b. Dr. Sherie Viencek's opinion

Plaintiff also argues that the ALJ failed to give sufficient reasons for giving little weight to Dr. Sherie Viencek's opinion. The Court agrees.

Dr. Viencek completed a medical source statement, Tr.1763-1768, in which she opined that Plaintiff could sit two to four hours a day, and could not do certain activities of daily living. Tr. 1765. She also opined that Plaintiff could lift less than five pounds less than occasionally, and could stand/and or walk up to two hours a day. Tr. 1768. Dr. Viencek wrote that Plaintiff had fatigue all the time. Tr. 1768. Dr. Viencek references fibromyalgia

13

as one of the bases for this opinion. Tr. 1765 & 1767. The ALJ acknowledged Dr. Viencek as a treating physician, Tr. 786,[2] but gave this opinion little weight because it is "inconsistent with the claimant's medical record, which shows that she generally demonstrated full range of motion in her spine and her joints and 5/5 strength in her upper extremities. This evidence is inconsistent with such extreme restrictions." Tr. 786-87. Assuming Dr. Viencek is a physician and thus an "acceptable medical source," the so called "treating physician's rule" would apply. Under this rule, an ALJ is normally required to find a treating physician's opinion to be controlling when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. 404.1527(c)(2). "On the other hand, in situations where 'the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinion of other medical experts,' the treating physician's opinion 'is not afforded controlling weight." *Pena ex rel. E.R. v. Astrue*, 2013 WL 1210932, at *15 (E.D.N.Y. March 25, 2013) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)); *see Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). "'[T]o override the opinion of the treating physician, we have held that the ALJ must consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the

---

[2]The Commissioner notes that "Dr. Sherie Viencek" is not listed as a licensed physician in the NYS Office of Professionals Database, and that her website indicates that she is a chiropractor and certified board nutritional specialist but not that she is a medical doctor. Def. Br., at 21, n. 8 (citations omitted).

14

opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). An ALJ must "set forth her reasons for the weight she assigns to the treating physician's opinion.*"* *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell*, 177 F.3d at 133.

Even assuming that Dr. Viencek is a chiropractor, *see* fn. 2, *supra*, she is nonetheless an "other medical source." *See Hurysz v. Comm'r*, No. 17-CV-1145, 2019 WL 1643545, at *4 (W.D.N.Y. Apr. 16, 2019)("Plaintiff termed Dr. Nowak to be her long-term chiropractor, but, under Social Security regulations, chiropractors are not deemed treating medical sources. Chiropractors are considered merely other medical sources.")(citations omitted). Social Security Administration regulations call for application of substantially the same factors listed in *Selian* when considering the opinions of "other medical sources." SSR 06–03P, 2006 WL 2329939, at *4 (Aug. 9, 2006) (directing consideration of factors including "how long the source has known and how frequently the source has seen the individual," "how consistent the opinion is with other evidence," "the degree to which the source presents relevant evidence to support an opinion," "how well the source explains the opinion," and "whether the source has a specialty or area of expertise related to the individual's impairment" in evaluating opinion evidence from other medical sources, because "[t]hese factors represent basic principles that apply to the consideration of all opinions from medical sources.... "). Further, although opinions from medical sources that are not "acceptable medical sources" do not qualify for the special status and potentially

controlling weight accorded to the opinions of treating physicians, they must nonetheless be considered on "the severity of the individual's impairment and how it affects the individual's ability to function." *Id.* at *2; *see also* Def. Br., at 21, n. 8 ("[T]he opinions of 'other medical sources' like chiropractors should otherwise be evaluated according to the same criteria used to evaluate the opinions of acceptable medical sources (who are not granted controlling weight) . . . ."). The failure to properly assess the opinion of an "other medical source" is grounds for remand. *See, e.g., Pagan v. Comm'r of Soc. Sec.*, 2017 U.S. Dist. LEXIS 109859, at *50-51 (S.D.N.Y. July 13, 2017) (remanding for further proceedings in part because the ALJ "failed to assess properly the nurse practitioner's opinion").

Here, the ALJ's decision does not indicate that she considered the frequency, length, nature, and extent of treatment by Dr. Viencek, or whether Dr. Viencek is a specialist. The reference that Plaintiff's medical record "shows that she generally demonstrated full range of motion in her spine and her joints and 5/5 strength in her upper extremities" is an insufficient analysis of whether the amount of medical evidence supports the opinion that Plaintiff could only stand/walk up to two hours and sit for two to four hours in a day, or whether this aspect of the opinion is consistent with the remaining medical evidence. Moreover, because of Plaintiff's fibromyalgia diagnosis, the reference to objective clinical findings to discount Dr. Viencek's opinion is insufficient. *See Green–Younger*, 335 F.3d at 108-09. The matter will be remanded for further elaboration on the weight given to Dr. Viencek's opinion.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is

**GRANTED** and the Commissioner's motion for judgment on the pleadings is **DENIED**. The decision of the Commissioner is **VACATED** and this case is **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a determination consistent with this Decision and Order.

**IT IS SO ORDERED**

Dated:September 24, 2019

Thomas J. McAvoy
Senior, U.S. District Judge